[713 NYS2d 736]

In the Matter of INGRID N. DAVIS (Admitted as INGRID NICHOLA DAVIS), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE SECOND AND ELEVENTH JUDICIAL DISTRICTS, Petitioner.

Second Department, September 25, 2000

**APPEARANCES OF COUNSEL**

*Robert H. Straus*, Brooklyn (*Susan Korenberg* of counsel), for petitioner.

*Ingrid N. Davis*, Jamaica, respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated July 1, 1999, containing one charge of professional misconduct. After a prehearing conference on November 22, 1999, and a hearing which began on December 8, 1999 and concluded on December 15, 1999, the Special Referee sustained the charge. The petitioner now moves to confirm the Special Referee's report and to impose such discipline as the Court deems appropriate. The respondent has submitted an affirmation in opposition requesting that the motion to confirm be denied.

The petition alleged that the respondent failed to properly safeguard and improperly converted funds that had been entrusted to her as a fiduciary incident to her practice of law, in violation of Code of Professional Responsibility DR 9-102 (b) (22 NYCRR 1200.46 [b]) and DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [8] [now (7)]).

The respondent was retained by Kevin Washington in or about February 1997. At that time, the respondent maintained an IOLA account at Republic National Bank in which funds entrusted to her as a fiduciary incident to her practice of law were maintained. The respondent opened a second IOLA account at Republic for the purpose of maintaining funds expected to be received from Mr. Washington. In or about February 1997 Mr. Washington delivered a check in the sum of $250,000 to the respondent which she deposited into the Washington escrow account. Mr. Washington also informed the respondent that he had made a wire transfer in the sum of $2,000,000 into that account. The respondent received no documentation confirming that purported transfer. Mr. Washington had, in fact, not made the transfer.

Without confirming the transfer, the respondent drew the following checks, totalling $947,478, from her Washington escrow account between February 13, 1997 and February 24, 1997:

* check no. 1004, in the amount of $3,000;
* check no. 1006, in the amount of $2,478;
* check no. 1007, in the amount of $5,000;
* check no. 1013, in the amount of $6,000;
* check no. 1014, in the amount of $500,000;

* check no. 1015, in the amount of $10,000;
* check no. 1017, in the amount of $150,000;
* check no. 1019, in the amount of $150,000;
* check no. 1020, in the amount of $7,000;
* check no. 1021, in the amount of $40,000;
* check no. 1022, in the amount of $20,000;
* check no. 1023, in the amount of $20,000;
* check no. 1025, in the amount of $20,000;
* check no. 1028, in the amount of $2,000;
* check no. 1008, in the amount of $12,000.

On or about February 19, 1997, the $250,000 check deposited into the respondent's Washington escrow account was dishonored. All of the aforementioned escrow checks were dishonored by the bank due to insufficient funds. The bank erroneously honored two checks drawn by the respondent against the Washington escrow account in the amounts of $400 and $3,791.19, respectively.

On or about February 25, 1997, the respondent authorized the transfer of $3,198 in escrow funds from her attorney escrow account into her Washington escrow account. On or about February 26, 1997, the respondent was required to maintain a balance of $49,687.60 in her attorney escrow account. In consequence of the transfer made on February 25, 1997, the balance in the respondent's attorney escrow account on February 26, 1997, was depleted to $46,327.90. As a result of the depletion of the attorney escrow account, there were insufficient funds to cover a check in the sum of $1,822.95, which represented escrow funds to be disbursed as part of a real estate closing. That check was dishonored due to insufficient funds when presented for payment on or about March 18, 1997.

Based on the respondent's admissions and the evidence adduced at the hearing, the Special Referee properly sustained the charge. The Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent submits that she should not have to lose her license to practice law because she was deceived by a client and was the victim of bank error in its attempts to prevent a loss to itself. The respondent emphasizes her lack of venality. The Special Referee notes that the respondent's testimony as to the tangled web spun around her by an experienced confidence man and her misguided response

thereto seems sincere and heartfelt, and she offers the "emotional roller-coaster" regarding the loss of the respondent's expectations of financially rewarding legal opportunities as additional mitigation.

The Grievance Counsel notes that the respondent was issued a Letter of Caution in June 1998 for failing to re-register as an attorney.

We conclude that the respondent's acts violated the fundamental obligations of a fiduciary and warrant her disbarment.

MANGANO, P. J., O'BRIEN, RITTER, SANTUCCI and SULLIVAN, JJ., concur.

Ordered that the motion to confirm the Special Referee's report is granted; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Ingrid N. Davis, is disbarred, and her name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (see, 22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Ingrid N. Davis is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law.